UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL MANNING, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | No.  4:15-CV-01551 CEJ |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO PETITIONER'S MOTION
UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

COMES NOW, the United States of America, by and through Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Tiffany G. Becker, Assistant United States Attorney for said District, and for its response to the Court's October 13, 2015 order and in opposition to Michael Manning's § 2255 motion as follows:

**I.    PROCEDURAL HISTORY**

On March 14, 2012, defendant/petitioner Michael Manning (Manning) was initially charged in an indictment with one count of receipt of child pornography (Count I) and two counts of possession of child pornography (Counts II and III).  Doc. 1 and 2.  Manning was represented throughout the proceedings by defense attorney Kenneth Schwartz.[1]  Doc. 4. Manning voluntarily waived his right to file pretrial motions.  Doc. 25, 26.

Manning proceeded to trial on two counts, one receipt and one possession of child pornography.  Count I charged that between on or about August 14, 2010 and on or about September 25, 2010, Manning knowingly received child pornography that had been mailed, shipped and transported in interstate and foreign commerce by any means, including by

_____

[1] Defense attorney Peter C. Sullivan entered his appearance later in the matter on August 28, 2012.  Doc. 55.

computer, that is image files that had been received via the Internet which contained child pornography.   Count II charged that beginning at an exact time unknown, but including September 25, 2010, Manning knowingly possessed material that contained an image of child pornography that was produced using materials that traveled in interstate and foreign commerce, to wit, a Memorex compact disk.

Following a four-day jury trial before this Court, he was convicted of both counts.  On December 11, 2012, this Court sentenced Manning to 240 months imprisonment on Count I and 120 months imprisonment on Count II, to run consecutively, for an aggregate sentence of 360 months.

Manning's trial counsel filed a direct appeal of his conviction and sentenced in which he raised five grounds for relief.   Manning argued that: (1) there was insufficient evidence to support the jury's verdicts; (2) the conviction on Count I should have been vacated as violative of the double jeopardy clause; (3) chat transcripts from Manning's computer should have been excluded as hearsay; (4) the Memorex disk should not have been admitted into evidence; and (5) his sentence was unreasonable.   The Eighth Circuit Court of Appeals rejected Manning's arguments and affirmed the conviction and sentence on January 3, 2014.   *United States v. Manning*, 738 F.3d 937 (8th Cir. 2014).   Defense counsel filed a petition for rehearing by the panel and en banc, both of which were denied on February 20, 2014.   Finally, defense counsel filed a petition for writ of certiorari in the Supreme Court.   The Court denied certiorari on October 6, 2014.  *Manning v. United States*, 135 S. Ct. 149 (2014).

## II.    EVIDENCE PRESENTED AT TRIAL

The investigation into Manning's activities began on July 15, 2010.  Wayne Becker, an investigator with the Dent County Sheriff's Department who had 28 years of computer training and experience, received information from a law enforcement database that a particular Internet Protocol (IP) address was associated with child pornography contained on a file sharing

network.[2] TR,[3] 10-11, 24, 31-33.

Individuals involved with the trafficking or trading of child pornography frequently use file sharing networks because there is a sense of anonymity involved as the networks do not require sign-on, passwords or registration. TR, 28-29. Additionally, the file-sharing networks have search functions which enable persons interested in locating child pornography to locate it through the use of search terms that are very common to child pornography files. TR, 29.

In an effort to thwart the proliferation of child pornography in these file-sharing networks, law enforcement officers have created and managed databases which enable them to search file-sharing networks to locate computers involved in this activity. TR 29-30. [4]

---

[2] File sharing programs and networks such as Limewire and Gnutella are referred to as "peer-to-peer" networks because there is no central server involved and members the network's computers talk to one another. TR, 15-16. A computer user seeking to use Limewire could simply conduct an internet search for "Limewire" and download to the program to his or her computer. TR, 17-18. The default location for installation on a computer is to the C: drive. TR, 18.

Once Limewire is installed, a user would see a screen containing a list of what is in the user's library and available to share with other users. TR, 19-20. Once a user is part of the file sharing network, he or she can search the libraries of other members of the network and download content (music, videos, images, etc.) from the computers of other members. TR, 20-23.

[3] Although the trial and sentencing hearing in this case were transcribed in two volumes (DCD 124 and 125), they were consecutively paginated (Volume 1 contains pages 1-259 and Volume II contains pages 260-607). Accordingly, the Government will cite all references to the transcribed materials as "TR, ___" and will not distinguish between the two volumes.

[4] They can locate this material by looking for search terms consistent with child pornography ("PTCH" -which stands for preteen hard core, "R@ygold," "Lolita," "7Yo" or "8Yo" - which stand for years of age. TR, 30-31. Additionally, law enforcement is familiar with the SHA or hash algorithms which are like digital "fingerprints" unique to known child pornography images and videos and can locate child pornography files on the file sharing network that way. TR, 26-27, 30.

In this case, on July 15, 2010, Investigator Becker employed a law enforcement database that located a particular IP address (later found to be subscribed to Manning) that was in possession of suspected child pornography. TR, 32-33, 49. Specifically, the IP address had in its library 22 image and video files in its library available to share with other users of Limewire. TR, 34; Gov't's Exh. 12. There were no music files present. TR, 40. Several of these files were known by their SHA or hash values to be child pornography. TR, 34. The names of several files contained conventions consistent with child pornography like: "Preteen," "Underage PTHC," "preteen raped," "Cute little ten-year-old girl preteen boy posing naked nude sucking friend's penis young child sex;" "11YO or 10YO brothers naked nude on bed pedo young child sex;" "Sex porn gay hairless kids little child young pedo boys nude 8YO, 9YO, 10YO, 11YO, 12YO 117." TR, 38-40.

To further his investigation and gather evidence, Investigator Becker conducted a "single-source download" from Manning's IP address of the following files:

> "4'2" cute gay preteen boys 10yo, 13yo snuggled together" - an image of two juvenile males, one nude, one with his pants down;

> "Preteen 10yo boy sticks willie up 9yo's bum" - an image of two male juveniles, one potentially penetrating the other one from behind while the other holds his genitals

> "Sex porn gay hairless kids little kid young pedo boys" - an image file of a juvenile boy laying on a couch or a bed nude with his genitals exposed

> "PTHC 6yo boy joy bedtime rape until cum private pedo" - a video file of a three- to six-year-old female child covered from the waist up by a blanket so her genitals and bottom are exposed and depicting an adult male penis attempting to penetrate her.

TR, 46-48. Investigator Becker successfully downloaded the three image files and 80% of the video file. TR, 46-48.

Investigator Becker then sent an investigative subpoena to Fidelity Communications, the internet service provider to the IP address to find out the identity of the IP's subscriber. TR, 48.

Fidelity Communications provided information revealing that the IP address from which Investigator Becker had downloaded the child pornography was subscribed to: Michael E. Manning, username MEM659, email address mem659@fidnet.com at service address 25 Sauk Court in Sullivan, Missouri since July 13, 2010.  TR, 50-51.

FCSO Lieutenant Charles Subke, a 15-year law enforcement officer, received the referral from Investigator Becker and conducted further investigation.  TR 169-72.  Specifically, Lt. Subke drove by the residence at 25 Sauk Court and saw a vehicle there bearing license plates issued to Manning.  Lt. Subke prepared an application and affidavit in support of a search warrant for Manning's residence on September 21, 2010.  TR, 172.  Lt. Subke and other officers went to the residence to execute the search warrant.  They knocked on the door and Manning answered.  He was the only one in the house.  TR 173-75.

Lt. Subke explained to Manning that the officers had a search warrant for the residence, but that Manning was not under arrest.  TR, 175.  Lt. Subke then asked whether Manning knew why the police were there.  TR, 176.  Manning denied knowing why they were there so Lt. Subke asked him whether he had a computer.  TR, 176.  The interview that ensued was conversational.  Manning was sitting on the couch with his feet up and smoking.  TR, 217. During the interview, Manning said he had obtained a laptop in May 2010.  He knew that the operating system on his laptop was Vista and his login username was "mem659." The computer was password protected and Manning provided the password to Lt. Subke.  TR, 177.  Manning further stated that his internet service provider was Fidelity Internet and that his wireless network was secured and password protected.  TR, 176.  He told Lt. Subke that he used the computer for social networking and email.  TR 181.  Manning classified his computer expertise as "strong intermediate." TR, 181.

Manning admitted using Limewire peer-to-peer file sharing software to download music since May 2010.  When asked about any other types of file sharing software, Manning

volunteered that he had been offered a free trial of "Gigatribe," but that he did make use of the offer and denied having "Gigatribe" file sharing software on his computer.  TR, 177.

Lt. Subke told Manning about the investigation that had located images associated with child pornography present on a computer using his IP address.  Manning denied any knowledge of child pornography, but said that investigators would find some adult pornography on his computer.  TR, 178-79.  Manning provided search terms that he used to find adult pornography. TR 180.  When asked why a computer using his IP address would be associated with child pornography, Manning said that his friends (Kenny Green, Jr., John Barnett and Joseph Butler) could have had access to his computer. TR, 180.  He never mentioned his wife, her friend or his contentious divorce.  TR, 520.

While Lt. Subke interviewed Manning, other officers engaged in the search of Manning's residence and the seizure of evidence.  TR, 181-82.  FCSO Detective Matt Corbett photographed the scene and assisted in the search and seizure of evidence.  TR, 68-70.  FCSO Detective Rebecca Biermann also assisted in the search.  TR, 122-23.  Det. Corbett found a Dell laptop computer on a desk in the main living room.  TR, 71-72, 75.  Det. Biermann conducted a "soft shutdown" of the computer to prevent the loss of evidence.  TR, 126.  Det. Biermann located one CD on the computer desk which was not seized because it either was a commercial CD or had nothing on it.  TR, 125.  Later, Det. Biermann searched the desk drawers and located what she believed to be two CDs in two separate plastic jewel cases.  TR, 127-28.  Det. Biermann did not open the jewel cases to determine how many CD's were inside each case.  TR, 128.    The only disks that were visible through the plastic jewel cases were a pink Maxell disc and a TDK brand disk.  TR, 76; Gov't's Exh. 5, 6.  Det. Corbett packaged them in their cases into an envelope which he sealed.  TR, 128; Gov't's Exh. 3.  Because the FCSO evidence custodian was not available on September 25 (a Saturday), Det. Corbett stored the laptop and the sealed envelope containing the disks in his locked office until they could be deposited in the evidence locker on

September 28, 2010.  TR, 115.

On October 14, 2010, Det. Biermann retrieved the laptop computer and disks from the FCSO's evidence custodian and transported them to the Regional Computer Crime Education Enforcement (RCCEEG) lab in Clayton, Missouri where she gave them to RCCEEG employee Cara Wood.  TR, 129-30.  Ms. Wood logs in evidence for RCCEEG and received the laptop computer and the envelope containing the disks from Det. Biermann.  TR, 148-49.  She opened the envelope to compare the contents inside to what was noted on the evidence sheet.  TR, 150. Inside the envelope containing the disks, Ms. Wood found three disks instead of two.  In addition to the Maxell and TDK brand disks which were visible through their cases, Ms. Wood located a Memorex brand disk underneath the Maxell brand disk.  TR 150-151.

Because there were in fact three disks inside of the evidence envelope instead of two, Ms. Wood notified Det. Biermann and then noted on the evidence sheet that there were three disks so that everyone would be aware that there were in fact three disks and not two as initially believed. TR, 151. Manning made numerous challenges to the chain of custody of the evidence and the storage of the evidence.  He also attacked discrepancies between various evidence logs.  TR, 96-109, 113-18, 137-40, 141-46, 152-67, 182-200.

After the evidence was received at RCCEEG, it was ultimately examined by certified forensic computer examiner and expert, Detective Steven Grimm. With regard to the Memorex disk (Govt's Exh. 4), Det. Grimm obtained documentation that Memorex CD-ROM disks have never been manufactured in Missouri.  TR, 229-30.  Additionally, Det. Grimm made a digital image of the data stored on the disk and examined it.  TR, 230-31.  The disk contained 14 video files that depicted child pornography.[5]  TR, 233.  Portions of three of these video files were shown to the jury (TR, 266):

---

[5]The parties stipulated that all of the "visual depictions that are alleged to have been received and possessed in the indictment are of actual minors."  TR, 470; Govt's Exh 55.

"CPTVG13bond10-11-12YOchildloverlittlecollection video.mpg" - a video file depicting a prepubescent female child in a lascivious display of her genitals and the same child blindfolded and restrained with rope and an unknown person behind her touching her genitals and chest while she is restrained (TR, 238-39; Govt's Exh. 24);

"new!2005KDVPJKRBVBIBCAMHMV) -preteenboysfuckinhot.mpg" - a video file depicting a prepubescent male engaging in anal intercourse with another person (TR, 239-40; Govt's Exh. 25);

"BIBCAM10YOerection boy (incredible).avi" - a video file depicting a prepubescent male child with an erection in a lascivious display of his genitals (TR, 240-41; Govt's Exh. 26).

Additionally, Det. Grimm examined Manning's laptop computer bearing serial number 5GC5MJ1. TR, 241-42; Govt's Exh. 2. Manning's laptop computer contained a hard drive. TR, 244-45; Govt's Exh. 1. Det. Grimm employed the use of a write-blocking device to ensure that nothing was added to or deleted from the hard drive during the process of making a digital copy of the hard drive. TR, 246-47.

Det. Grimm obtained registry software information from the hard drive. TR, 250. The hard drive operated with Vista Home Premium Operating System which was installed on November 19, 2009, to registered owner "MEM659." TR, 250. The user name must be manually entered by the user of the computer. TR, 251. Someone last logged on to the computer at 7:13 a.m. local time on September 25, 2010 (the date of the execution of the search warrant), and the password had last been changed on April 22, 2010, at 5:03 p.m. TR, 252-54; Govt's Exh. 30.

Manning's hard drive reflected that the Limewire file-sharing application, the Yahoo Messenger application and the Gigatribe application had each been installed. TR, 254-56, 279; Govt's Exh. 31, 32, 33. Gigatribe is a file-sharing application that is closely coupled with a chat application. It is different from Limewire in that with Gigatribe, each individual user will select which files they would like to make available to other Gigatribe users and then typically during chat sessions, users will exchange files which are often password protected. TR, 279-80. Individuals involved in trafficking child pornography frequently use Gigatribe because they are able to vet or verify whether someone has an interest in obtaining illegal files before granting access to that material. TR, 280.

Det. Grimm located a path on Manning's computer where Gigatribe downloads were stored, "C:\users\MEM659\documents\gigatribedownloads\boost_virgin." TR, 281. The term "boost_virgin" in this context indicates that there was a user profile of the same name being used on Gigatribe on the computer. TR, 282.

During his examination of Manning's computer, Det. Grimm located 1,029 images and 49 video files, all depicting child pornography. TR, 287. The jury was shown a small representative sample of the materials including the following images located in the users folder associated with MEM659 within the Gigatribe downloads\boost_virgin folder:

-"jamie4.jpg" - an image file located depicting a juvenile male with an erect penis (TR, 288; Govt's Exh. 36);

-"blasen3.jpg"- an image file depicting a child performing oral sex on a male (TR, 288; Govt's Exh. 37);

-"dad son 11763.jpg" - an image file depicting an adult male performing oral sex on a prepubescent male child (TR, 289; Govt's Exh. 38);

-"yng boy suck.jpg" - an image file depicting a prepubescent male performing oral sex on an adult male (TR, 289; Govt's Exh. 39);

-"4mo_WILLOW?1.jpg" - an image file depicting an infant child performing oral sex on an adult male (TR, 290; Govt's Exh. 40);

-"qqaazz pthc pedo dad fucks 2yo boy 03.jpg - an image file depicting an adult male having anal intercourse with a prepubescent male child (TR, 291; Govt's Exh. 41).

Additionally, out of the 49 video files, the jury saw portions of the following which were located in the users folder associated with MEM659 within the Gigatribe downloads boost_virgin folder:

-"Education-Daphney(9YO)Demonstrating Child Pedo Outercourse Sex With Dad-pthc.avi" - a video file depicting a prepubescent female having vaginal intercourse with an adult male (TR, 292-93; Govt's Exh. 41);

-"7yogir.mpg" - a video file depicting a prepubescent female child being anally penetrated by an adult male (TR, 294; Govt's Exh. 43);

-"!3month baby1.avi" - a video file depicting an infant laying in a supine position and a hand touching the infant's genital area, then an adult male posed with his penis near the infant's genitals and subsequently the penis is inserted into the infant's genital area and then the infant was repositioned so the infant's mouth is accessible to the adult male's penis (TR, 296; Govt's Exh. 44)

-"11yoBoy&HisDog.wmv" - a video file depicting a prepubescent male urinating into a bucket and then a dog licking the anal area of the prepubescent male (TR, 296-97, Govt's Exh. 45);

-"child from his hands tied to the ankles fucked by man.wmv" - a video file depicting the lascivious display of a prepubescent male's erect penis who is handcuffed at the ankles and wrists, then a male enters and manually masturbates the child and then applies lubrication to the child's anal area and inserts his finger into the child's anus and then repositions the child on his knees and penetrates the child anally with his finger and then with a phallic device (TR, 297-98; Govt's Exh. 46);

-"Grandpa and his Little Grandson.avi" - a video file depicting an adult male performing oral sex on a prepubescent male child and then the child touching the adult male's penis and placing his mouth on the adult male's penis (TR, 298-99; Govt's Exh. 47).

Det. Grimm was able to determine that child pornography files had been played on Manning's computer as recently as the day prior to the execution of the search warrant, September 24, 2010.  TR, 299-301. The recently played videos included:

-"3 Yr Old Oceane With Daddy.wmv," - a video file depicting a female prepubescent child

sitting on an adult male's lap with his erect penis pressed to the child's gential area.  The adult spreads the child's buttocks and touches her vagina and his penis repeatedly touches the child's anal area (TR, 302-03; Govt's Exh. 49); and,

-""0.5Yo-Boy-Bayhee-04 4m03S.wmv" - a video file depicting a prepubescent male child in a lascivious display of his genitals and a hand masturbating the child's penis followed by the child being repositioned with an adult male penis positioned near the child's anus (TR, 303-04; Govt's Exh. 50).

In addition to the video files and images recovered from Manning's computer, Det. Grimm located archived Gigatribe chats involving a user named "boost_virgin" and Yahoo! Messenger chats involving a user named "mem659."  TR, 309, 319-60, 360-74; Govt's Exhs. 52A-P and 53A-D.  The chats introduced at trial involved: the trading, exchanging and accessing of child pornography videos and images (TR, 322-25, 357); discussions wherein the participants appear to be vetting one another to ensure that they are not members of law enforcement and are therefore safe to grant access to their child pornography collections (TR, 329-33, 336, 340, 353); types and amounts of child pornography files in the participants' libraries and their content (TR, 324, 338-39, 342-43, 349-50); sexual interests and age preferences (TR, 325-26, 330-33).

Additionally, some of the chats involve identifying information related to "boost_virgin" and "mem659" which demonstrate that those usernames were employed by Manning. TR, 330-31.  For example, "boost_virgin" said that he was "31," in "MO," "5'8''" (height) and "6 ½ cut" (circumcised penis length).  TR, 336.  In another chat, "boost_virgin" said he was from "MO" and is "31" (years old) and commented on the Michael Devlin case, indicating that, "Both kids were about 50 miles or less from me." TR, 330-31.  In other chats, "boost_virgin" said he had two boys that are six and ten (years old).  TR, 332, 335, 336.

In addition to the Gigatribe chats involving "boost_virgin," Manning's admitted username, "mem659," was a participant in the Yahoo! Messenger chats.  In these chats, "mem659" provided similar personal information consistent with  Manning.  TR, 363-64.

11

Throughout the chats, Manning, employing usernames "boost_virgin" and "mem659," discussed his sexual interest in young children.[6] Additionally, the chats and accompanying file transfers demonstrated that Manning was actively engaged in sending and receiving child pornography.

Det. Grimm generated a 34-page report of Manning's computer's Explorer History which tracked files accessed over time through Windows Explorer and noted many of the files were likely child pornography based on the names of the files.  TR, 374-78; Govt's Exh. 51.  Some of these files were "last visited" by the computer user at different dates and times throughout August and September 2010.  TR, 377.  Det. Grimm also generated a 47-page report of the file creation times and relevant chats, images and videos involving child pornography.  TR, 381, 390; Govt's Exh. 54.  The report demonstrated that this activity occurred at various time on dates including:  May 7, 2010; July 15, 18, 27 and 28, 2010; August 3, 4, 5, 13, 14, 17, 22, 24, 25 and 29, 2010; September 11 and 18, 2010. TR, 382-90.

On cross-examination, defense counsel asked Det. Grimm about malicious remote access programs.  TR, 447.  Det. Grimm found no evidence of the operation of a malicious remote access program.  Additionally, the computer had antivirus software installed and functioning. TR, 458.

Manning was the only witness for the defense.  He testified that the desk at which the laptop and disks were found in his residence had belonged to him and his estranged wife, Sara Manning, while they lived together and that Sara was the primary user of the desk.  TR, 472-73. Sara has a high school diploma and worked at a floral shop.  TR, 532.  During the marriage, Manning stated that Sara had met a friend, Jim Traxler, through the Cub Scouts around

---

[6]The district court granted Manning's motion in limine to exclude the portions of the chats where Manning discussed the sexual abuse of his own children.  TR, 7.  Accordingly, those portions of the chats were redacted from the exhibits presented to the jury.

September 2006. Sara spent time with Traxler, traveling out of town for a Cub Scout function on at least one occasion. TR, 478-79. Manning asserted that Traxler told Manning that he had spent 20 years in government intelligence, however Manning later conceded that Traxler was then disabled and unemployed. TR, 477, 526. Manning filed for divorce in the fall of 2009. TR, 280.

Manning testified that he purchased the laptop computer on ebay in April 2010 set up the username "mem659" and password "ESCO2659" which he claimed was the same username and password he used on the computer when he still lived with Sara. Upon moving to his residence in May 2010, Manning testified that all of the furniture except the desk had been taken by Sara. TR, 484. Despite it being the only thing left behind, Manning asserted that he never opened any of the drawers. TR 485, 503.

Manning stated that he suspected that Sara had accessed his residence without his permission on May 7, 2011 and May 19, 2011, approximately eight months after the execution of the search warrant. TR, 485-89. Manning admitted that despite being charged with child pornography crimes, he never informed police that Sara Manning or Jim Traxler may have had access to his computer. TR, 498. Manning denied being a participant in any of the chats admitted at trial or receiving or possessing any child pornography. TR, 495-96.

On September 7, 2012, the jury found Manning guilty of Counts I and II and unanimously found that he received or possessed each of the images listed on the verdict form. DCD 79.

## III.    MANNING'S CLAIMS FOR RELIEF

This matter is now before the Court on Manning's pro se motion to vacate his sentence pursuant to 28 U.S.C. § 2255 wherein he alleges ineffectiveness of his defense counsel. In his

motion, Manning alleges his counsel, Attorney Kenneth R. Schwartz, was ineffective in four ways: First, he claims that trial counsel failed to subject the prosecution's case to meaningful adversary testing by not calling a defense expert witness at trial. Second, Manning alleges that his counsel advised him incorrectly on the law when making choices in the pretrial planning process when he failed to move to suppress the CD that served as the basis for Count II. Third, Manning claims that counsel failed to call an alibi witness. Fourth, Manning contends that his counsel was ineffective on direct appeal for failing to cite particular case law.

For the reasons stated below, all of Manning's claims are without merit. He has failed to meet his burden under *Strickland v. Washington* and show that his counsel was deficient or that he was prejudiced in any way. His motion for relief must be denied.

## IV.    ARGUMENT

In order to show ineffective assistance of counsel, Manning "must demonstrate: (1) his attorney's performance was deficient and fell outside the range of reasonable professional assistance; and (2) he suffered prejudice by showing that, absent counsel's ineffective assistance, there is a reasonable probability that the result of the proceeding would have been different." *Hyles v. United States*, 754 F.3d 530, 533 (8th Cir. 2014) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

"Failure to establish either prong of *Strickland* 'is fatal to a claim of ineffective assistance.'" *Hyles*, 754 F.3d at 53 (quoting *Morelos v. United States*, 709 F.3d 1246, 1250 (8th Cir. 2013)).

Under this framework, Manning bears the "heavy burden" of proving both constitutional deficiency and prejudice. *Brown v. United States*, 311 F.3d 875, 878 (8th Cir. 2002); *Patterson v. United States*, 133 F. 3d 645, 647 (8th Cir. 1998); *United States v. Apfel*, 97 F.3d 1074, 1076 (8th

Cir. 1996); *see also Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (noting that "[s]urmounting *Strickland*'s high bar is never an easy task").

To meet his heavy burden under the first prong of the *Strickland* test, Manning must not only prove that his counsel made errors, but that those errors were "so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Far from guaranteeing exceptional performance of counsel, the Sixth Amendment guarantees only "reasonably effective assistance" of counsel. *Id.* at 688. Under this standard, Mr. Schwartz is entitled to a "strong presumption" that his conduct falls within the wide range of professionally reasonable assistance. *Nguyen v. United States*, 114 F. 3d 699, 703-03 (8th Cir. 1997) (quoting *Strickland*, 466 U.S. at 689).

Even if Manning could succeed in demonstrating that his counsel made errors of constitutional proportion, he still cannot prevail unless he proves that in the absence of those errors, the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice ... that course should be followed.").

## A. Claim One – Failure to Call a Defense Expert Witness Was Not Ineffective Assistance of Counsel

Manning alleges that his counsel failed to subject the Government's case to meaningful adversarial testing because he failed to call an expert witness at trial. Manning admits that the defense hired an expert. He alleges, "[t]he expert retrieved a lot of chat transcripts and made reports similar to reports made by the government expert. There was one report that was different. It could have been used to attack the government's case." 2255 Motion Attachment, p. 3. Manning alleges only that "[a]n expert for the defense could have attacked the government's technical details" and that "[o]ur expert did find a chat log that has a possibility of

15

disproving the graphic chat logs of highly illegal behavior, was in fact not as a result of my knowledge or actions."  Manning wholly fails to describe how the government's "technical details" could have been attacked or what this alleged information is that could have a "possibility" of disproving his participation in graphic chats.

The vague, conclusory and speculative allegations are entirely insufficient to show that Attorney Schwartz was ineffective for failing to call this defense expert as a witness or that Manning was prejudiced as a result.  In his sworn affidavit, attached hereto as Exhibit 1, Attorney Schwartz states, "it should be known that the defense did retain an expert witness," but that he "determined that said expert witness's testimony would not be beneficial in trial." Schwartz Affidavit, Exhibit 1, ¶ 7.  Manning's bald allegations to the contrary do not demonstrate that Attorney Schwartz's decision not to call the defense expert was anything but a reasoned exercise of trial strategy.  As such, he has failed to establish that Attorney Schwartz's performance was constitutionally deficient.

Similarly, the highly speculative nature of the allegation itself demonstrates the lack of prejudice to Manning.  Even taking his allegations at face value, Manning alleges speculatively only that the defense expert's information had a "possibility" of disproving the graphic chat logs were not a result of his knowledge or actions.  Manning does not allege how or why this is so. Importantly, Manning does not show how this would have demonstrated that he did not knowingly receive and possess child pornography as alleged in the indictment or how this undisclosed information would have impacted the outcome of the trial especially in light of the overwhelming evidence against him presented at trial.  Claim one fails.

**B.  Claim Two – Moving To Suppress the CD Would Not Have Been Successful**

Next, Manning alleges that Attorney Schwartz was ineffective for failing to advise him to move to suppress the Memorex CD that served as the basis of Count II of the indictment. Manning offers no theory whatsoever upon which the Court could have suppressed this evidence. Rightfully so, because it was seized during the execution of a lawful search warrant for Manning's residence which had been issued by a neutral magistrate and supported by probable cause.  Manning does not even argue to the contrary.

At trial, Attorney Schwartz repeatedly launched foundational and chain of custody challenges to the Memorex disk and asked that it not be received into evidence.  TR, 96-109, 113-18, 137-40, 141-46, 152-67, 182-200. Additionally, he rigorously cross examined witnesses on alleged inconsistencies in the evidence logs for this item.  This Court rejected those attempts. Attorney Schwartz then challenged this Court's ruling in the Eighth Circuit Court of Appeals. The Eighth Circuit found that the disk was properly admitted.  *United States v. Manning*, 738 F.3d 937, 944 (8th Cir. 2014) (holding that Manning offers no evidence to defeat the Memorex disc's presumption of integrity; consequently, the district court did not abuse its discretion in admitting it).

Attorney Schwartz appropriately pointed out alleged inconsistencies in the evidence logs and challenged admission of the disk as best he could.  However, there was no legitimate basis for moving to suppress the disk and he cannot be found to be ineffective for failing to raise a nonmeritorious argument.  *See Rodriquez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994). This Court and the Eighth Circuit have ruled that the disk was properly admitted into evidence. As such, Manning cannot show that he was prejudiced by counsel's failure to advise him to move to suppress this evidence and his claim of ineffective assistance of counsel on this basis

fails.

### C.  Claim Three – Failure to Call Manning's Brother as a Witness Was Not Ineffective

Next, Manning alleges that Attorney Schwartz was ineffective for failing to call his brother as an "alibi" witness to "testify about [his] whereabouts in July 2009."[7]  Manning claims he was "at a camping trip with him, but the forensic report shows me downloading child pornography."  2255 Motion Attachment, p. 4.  Again, Manning's allegations are supported only by vague conclusions.  Manning asserts that "[c]ounsel did not use all of the tools available to him" and that "[a]n alibi witness could have directly attacked the government's main evidence."  2255 Motion, p. 7.  Nowhere in Manning's filings does he describe what this alleged "alibi" witness's testimony would have been.  He simply alleges that he was on a camping trip when the forensic report showed that child pornography was being downloaded on his computer.

It is unclear as to how this could be "alibi" testimony at all.  Manning was charged with receiving child pornography between on or about August 14, 2010 and September 25, 2010 (Count I) and possessing child pornography beginning at a time unknown, but including the date of the execution of the search warrant at Manning's residence, on September 25, 2010.

At trial, Manning himself testified that he was on a camping trip at the Current River with his brother and mom from July 22-28, 2010.  TR, 489, 492.  Manning stated that he did not take his laptop computer with him on the trip.  Additionally, during his testimony, Manning described photographs (Defendant's Exhibits E and F) that were allegedly taken during the camping trip.  The photos depicted Manning's brother, sister-in-law and their three girls as well as Manning's vehicle, his brother's vehicle and Manning's stepfather's canoe.  TR, 491-92.

---

[7] While Manning refers to his whereabouts in July 2009, he testified at trial that he was on the camping trip in July 2010.  As activities in 2009 would have nothing at all to do with the investigation or charges, presumably Manning is referring to July 2010.

In light of the admission of this testimony and evidence, Manning fails to show how his attorney's failure to call Manning's brother to the stand was anything but a reasoned, strategic decision. Presumably Manning's brother's testimony would have confirmed Manning's own testimony about the camping trip. Manning himself was able to testify to much more about the case. A decision not to call Manning's brother and avoid potential inconsistencies is certainly not deficient performance.

Similarly, Manning has failed to show any prejudice as a result of a failure to call his brother as a witness. Manning's testimony that he was on a camping trip with family without access to his laptop from July 22-28, 2010 was before the jury. Any testimony from his brother in that regard would have been cumulative. Moreover, as established in the Government's case, the activity regarding the receipt and possession of child pornography was certainly not limited to the period between July 22-28, 2010.

Det. Wayne Becker testified that on July 15, 2010, in Manning's files, available for sharing, there was child pornography that the jury could reasonably have inferred had been previously been received by Manning via Internet. Additionally, with respect to the images and video files listed in the indictment, the Government presented evidence that these items were downloaded onto Manning's computer in August and September 2010. TR, 286-99. Det. Grimm also testified regarding a report of activity of the file creation times, relevant chats, images and videos involving child pornography in the case and that the activity occurred at various times on dates including: May 7, 2010; July 15, 18, 27 and 28, 2010; August 3, 4, 5, 13, 14, 17, 22, 24, 25 and 29, 2010; September 11 and 18, 2010. TR, 382-90. A camping trip that, according to the defendant who faced substantial criminal penalties or even a brother who presumably cared about him, allegedly occurred from July 22-28 most certainly does not

constitute an "alibi."

Moreover, on cross-examination, Manning admitted that there were no time or date stamps or other indicators as to when the camping trip photographs had been taken.  As such, even if Manning had been camping from July 22-28, that evidence was in front of the jury. Manning's brother's testimony would not have added to that fact.  Moreover, nothing about that camping trip would have impacted the jury's verdict that he received child pornography from between on or about August 14, 2010 and on or about September 25, 2010, as charged in Count I or possessed child pornography on or about September 25, 2010, as charged in Count II. Manning has conclusively failed to demonstrate either deficient performance or any prejudice as a result of the failure to call his brother as a witness.

### D.  Claim Four – Failure to Cite *Crawford v. Washington* in Connection with Manning's Opposition to the Admission of Chat Transcripts Was Not Ineffective

Fourth and finally, Manning alleges that Attorney Schwartz was ineffective on appeal when he failed to cite the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), in support of his argument that chat transcripts located on his computer should not have been admitted in trial.  Again, Manning fails to state what impact citation to the *Crawford* case would have in his case or how it would have affected the outcome of his appeal.  Manning quotes, "we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the Rules of Evidence."  2255 Motion Attachment, p. 6.  He does not explain, nor could he, how *Crawford* helps his cause or how Attorney Schwartz would have garnered Manning a benefit by citing it.

On appeal, Attorney Schwartz challenged the admission of the chat transcripts on several bases.  Specifically, he argued that the chats were hearsay because they were offered to prove that Manning was the speaker and that this Court failed to make a preliminary finding that

Manning was a person engaged in the chats.  Additionally, Attorney Schwartz argued that the admission of the statements made by chat partners were impermissible hearsay.  As correctly noted by the Eighth Circuit, this Court heard extensive arguments and confirmed that the chats contained identifying information about Manning.  *Manning*, 738 F.3d at 943.  The fact that this identifying information was found in the chats, coupled with the fact that the chats were found on Manning's computer was sufficient to admit the chats into evidence as Manning was a party-opponent.  Nothing in *Crawford v. Washington* changes the long held principle that a statement by a party-opponent is no hearsay.  Fed. R. Evid. 801(d)(2); *see also United States v. Brinson*, 772 F.3d 1314, 1320-21 (10th Cir. 2014) (admission by a party-opponent under Fed. R. Evid. 801(d)(2) is by definition not hearsay and thus not governed by the Confrontation Clause).

Similarly, *Crawford*'s holding would not have helped Manning attack the admissibility of the statements of the other unknown chat speakers.  As the Eighth Circuit correctly held, these statements were not offered for their truth, but rather to provide context for Manning's responses. *Manning*, 738 F.3d at 943.  These statements are not hearsay pursuant to Fed. R. Evid. 801(c)(2). In *Crawford* itself, the Supreme Court observed "[t]he [Confrontation] Clause … does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 60 n.9.

Citation to *Crawford* would not have benefitted Manning in any way.  Attorney Schwartz was under no obligation to raise a losing argument and he cannot be found to have been deficient for failing to do so.  Additionally, Manning has failed to show prejudice as a result of the failure to cite *Crawford* because the Confrontation Clause was not implicated by the admission of the non hearsay statements.

21

## V.    MANNING IS NOT ENTITLED TO AN EVIDENTIARY HEARING

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless 'the motion and the files and the records of the case conclusively show that [he] is entitled to no relief.'"  *Franco v. United States*, 762 F.3d 761, 763 (8th Cir. 2014) (quoting *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008)).  However, no hearing is required "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based."  *Franco*, 762 F.3d at 763.  Such is the case here.  As set forth in detail above, Manning's vague, conclusory, self-serving allegations are insufficient and therefore no hearing is needed.

## VI.    CONCLUSION

Manning's conclusory, vague allegations are completely insufficient to meet his heavy burden of demonstrating either that his counsel's performance fell below an objective standard of reasonableness or that he was prejudiced in any way as a result of any alleged deficient performance.  For all of the reasons described above, Manning's motion should be denied without a hearing.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

*/s/ Tiffany G. Becker*
TIFFANY G. BECKER, #46314MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200

22

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on January 19, 2016, the foregoing was filed electronically with the Clerk of the Court.

       I hereby further certify that on January 19, 2016, the foregoing will be served by mail via the United States Postal Service to the following non-participant(s) in Electronic Case Filing:

Michael Manning
#39375-044
MARION
U.S. PENITENTIARY
P.O. BOX 1000
MARION, IL 62959

                             */s/ Tiffany G. Becker*
                             TIFFANY G. BECKER #46314MO
                             Assistant United States Attorney