UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL MANNING, ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | Case No. 4:15-CV-1551 (CEJ) |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**<u>MEMORANDUM</u>**

This matter is before the Court upon the motion of Michael Manning to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. The United States has filed a response, and the issues are fully briefed.

**I. <u>Background</u>**

On September 7, 2012, a jury found Manning guilty of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Count I), and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count II).[1] He was sentenced to a 240-month term of imprisonment on Count I and a consecutive 120-month term of imprisonment on Count II. The judgment was affirmed on appeal. *United States v. Manning,* 738 F.3d 937 (8th Cir.), *cert. denied,* 135 S.Ct. 149 (2014).

The evidence the government presented at trial showed that law enforcement officers, using a peer-to-peer file-sharing program, downloaded images of child pornography from an Internet Protocol (IP) address connected to an account belonging

---
[1] The original Count II of the indictment was dismissed on the government's motion before trial, and Count III was renumbered as Count II.

to Manning. During the execution of a search warrant at Manning's home, officers seized a laptop computer and compact discs that contained 1,029 images and 49 videos of child pornography. Through forensic analysis of Manning's laptop the officers found several online chats that were enabled by downloading applications called Gigatribe and Yahoo Messenger. These chats were between an individual believed to be Manning and other individuals and concerned trading and collecting child pornography.

## II. Discussion

In the instant motion to vacate, Manning asserts that he was denied effective assistance of counsel at trial and on appeal. To prevail on an ineffective assistance claim, a movant must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. *Strickland v. Washington*, *466 U.S. 668, 688 (1984)*. With respect to the first Strickland prong, there exists a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Id. at 689. In *Strickland*, the Court described the standard for determining an ineffective assistance claim:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant

2

decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690.

To establish the "prejudice" prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id. at 694*. The failure to show prejudice is dispositive, and a court need not address the reasonableness of counsel's performance in the absence of prejudice. *United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996)*.

### **Ground One**

Manning first asserts that he was denied effective assistance of counsel as a result of his attorney's failure to present expert testimony at trial to rebut the government's evidence. Manning acknowledges that defense counsel retained an expert. *Mot. to Vacate, Attach. C* [Doc. # 1-1]. However, defense counsel ultimately "determined that said expert witness's testimony would not be beneficial in trial." *Schwartz Affid. ¶ 7* [Doc. # 7-1].

According to Manning, the expert witness "was the only person who could provide the Facebook chat logs." *Reply at p. 2* [Doc. # 11]. Copies of the logs are attached to Manning's reply, and they purport to show conversations between Manning and his relatives and friends. [Doc. # 11-1]. These logs, Manning contends, would have presented "a very different portrait of me . . . to the jury" and would have "directly attacked the Yahoo! and Gigatribe chats the government presented." *Reply at p. 2* [Doc. # 11]. To be sure, the innocent conversations reflected in the Facebook chat

logs contrast sharply with Manning's Gigatribe and Yahoo Messenger chats in which he discussed collecting and trading images of child pornography. However, the purpose of an expert witness is to "assist the trier of fact to understand the evidence or to determine a fact in issue" —not to paint a "portrait" of the defendant. *Fed. R. Evid. 702(a).* Additionally, while it is arguable whether the Facebook chats constitute evidence that would have been admitted at trial, it is clear that their admissibility would not have depended on the testimony of an expert witness. Finally, Manning does not explain in what way an expert witness could have challenged the government's evidence of his communications with other individuals involved in trafficking in child pornography.

Even if Manning could show that his attorney's decision not to present expert testimony fell below an objective standard of reasonableness, he has not demonstrated that he was prejudiced. Given the strength of the government's case, Manning has not shown that there is a reasonable probability that the outcome of the trial would have been different if defense counsel had presented expert testimony.

### **Ground Two**

In Ground Two, Manning asserts that defense counsel's failure to move to suppress certain evidence constituted ineffective assistance. Specifically, Manning contends that his attorney should have sought suppression of a Memorex CD containing child pornograpy that was seized during the search and that formed the basis for the charge in Count II.

The CD was seized pursuant to a search warrant. Manning does not contend that the search warrant was invalid nor does he articulate any grounds for suppressing

the seized evidence. Thus, Manning has not demonstrated any probability that a motion to suppress would have been successful.

Manning also alleges that his attorney told him that he was facing a sentence of five to seven years' imprisonment, and that "it did not matter if we got the CD suppressed or not." *Mot'n to Vacate, Attachment C* [Doc. # 1-1]. Although it is not clear whether this allegation is intended as a separate claim of ineffective assistance, the Court will treat it as such. Manning does not claim that he would not have gone to trial had he known that he faced a maximum 30-year sentence of imprisonment. So, even if defense counsel incorrectly stated the potential sentence, Manning has not demonstrated that he suffered prejudice.

### Ground Three

Manning's third ineffective assistance claim is that his attorney failed to call alibi witnesses to testify at trial. Manning testified that he was on a camping trip with relatives during the period July 22-28, 2010. In support of his motion, Manning submits the affidavits of his brother and sister-in-law, confirming that he was with them during this time and stating that they were available and willing to testify at trial.

The jury found Manning guilty of receiving child pornography between August 14 and September 25, 2010 and possessing child pornography on or about September 25, 2010. Additionally, the government's evidence included chats between Manning and other child pornography traffickers that occurred on dates before and after the camping trip. Thus, Manning's activities during the July 22-28, 2010 time period could not have established an alibi. At best, the testimony of his brother and sister-in-law would have been cumulative of Manning's own testimony. Manning has not demonstrated that he was prejudiced by the omission of the witnesses' testimony.

### Ground Four

On direct appeal, Manning challenged the trial court's admission of the transcripts of the Gigatribe and Yahoo Messenger chats that showed his conversations with other individuals about trading child pornography and Manning's sexual interest in children. *Manning*, 738 F.3d at 942. Manning argued that the evidence was hearsay and that the government had failed to prove that he was a party to the chats. *Id.* at 943. The court of appeals held that "the statements of the unknown parties to the chat conversations were not hearsay because the statements were not offered for their truth but rather to provide context for Manning's responses." *Id.* The court also ruled that there was sufficient evidence identifying Manning as one of the chat participants and that the chats were admissible "as circumstantial evidence (i.e., a non-hearsay purpose) associating Manning with the child pornography found on his computer. *Id.*

In the instant motion, Manning asserts that his attorney should have also challenged the evidence based on the case of *Crawford v. Washington*, 541 U.S. 36 (2004). In *Crawford*, the Supreme Court held that the admission of statement by a witness who did not testify at trial violated the defendant's Sixth Amendment right to confront witnesses. *Id.* at 68-69. Unlike *Crawford*, the admission of the chats between Manning and others did not implicate the Confrontation Clause. Manning has not demonstrated any reasonable probability that an argument based on *Crawford* would have been successful.

### III. Conclusion

For the reasons discussed above, the Court concludes that motion and the files and records of this case conclusively show that Manning is not entitled to relief under

6

28 U.S.C. § 2255 based on any of the claims he asserts his motion to vacate. Therefore, the motion will be denied without a hearing. *See Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)*. Additionally, the Court finds that Manning has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253.

An appropriate order will accompany this Memorandum.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 20th day of April, 2017.